## Commonwealth of Pennsylvania, Industrial Board, Department of Labor & Industry, Appellee, *v.* Birdsboro Corporation, Appellant.

Argued February 6, 1975, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Charles O. Barto, Jr.*, with him *Killian & Gephart*, for appellant.

*Joseph M. Hill*, Assistant Attorney General, with him *Charles S. Solit*, General Counsel, for appellee.

OPINION BY JUDGE ROGERS, March 21, 1975:

This is the appeal of the Birdsboro Corporation from an adjudication of the Industrial Board of the Department of Labor and Industry dismissing the appellant's petition for a waiver of or a variance from a requirement that it install an emergency lighting system in a portion of its industrial plant.

Since the hearing below consisted in large part of colloquy among members of the Industrial Board, wit-

nesses for the appellant and counsel for both sides, with frequent oblique and mysterious references to prior history, it has been almost impossible to grasp or record an intelligible history of the case. It seems, however, that the industrial plant in question was acquired by Birdsboro Corporation from an agency of the Federal government through the auspices of the Berks County Industrial Development Corporation. It also seems that the certification, apparently of the building's suitability for use, by the Department of Labor and Industry was required as a condition to Birdsboro Corporation's acquisition. Apparently also the Industrial Board of the Department of Labor and Industry gave its certification to this effect, subject to an agreement by Birdsboro Corporation to provide emergency lighting throughout the building. It seems that the Corporation in October 1971 filed plans conforming to the regulations of the Industrial Board for an emergency lighting system as required by Subsection B of Chapter 37 of the Board's regulations found at 34 Pa. Code, §§37.11 through 37.33.

A Board regulation at 34 Pa. Code, §37.24 provides that final plans approved by the Board should be valid for two years.

This case was commenced on July 25, 1973 when the Birdsboro Corporation petitioned the Industrial Board that it be relieved from installing any emergency lighting in a portion only of the building, referred to in the record as bays D and E. The record further establishes that a total of 120 of the Corporation's employes work in bays D and E in the production of cranes and other rolling mill equipment. One hundred and ten persons work during the first shift from 7:00 A.M. to 3:00 P.M., seven persons work the second shift, and three security guards are employed during the third shift.

Section 3 of the Act of April 27, 1927, P.L. 465, 35 P.S. §1223, provides that there shall be installed in the buildings enumerated elsewhere in the Act, including

plants and factories, such emergency lighting systems as the Department of Labor and Industry may specify are necessary. By Section 13 of the Act of June 2, 1913, P.L. 396, *as amended,* 71 P.S. §1442, the Industrial Board was created in the Department of Labor and Industry with power to make rules and regulations in matters and subjects to which the power and authority of the Department of Labor and Industry extends. The Industrial Board by regulation found at 34 Pa. Code, §37.371, has provided:

"Emergency lighting systems shall be required for the following occupancies and in spaces listed in §37.372 of this Title (relating to spaces of buildings), when used at any time either day or night when loss of power would cause illumination to be less than a minimum required by this Chapter:

\* \* \*

"(4) All group D occupancies in which the failure of power may cause the building to be in darkness, except the following:

"(i) Group D-1, D-2, D-3, and D-5 occupancies not more than two stories in height and where the total occupancy is less than 76 persons.

"(ii) Buildings used exclusively for warehouse purposes which are not over two stories in height are exempt from the requirements of emergency lighting."

It is conceded that bays D and E of Birdsboro Corporation's plant are a group D-3 occupancy. At the hearing, the appellant adduced testimony, in addition to that recited above relating to the use of bays D and E, which tended to show that subsequent to the Industrial Board's approval of its plans for emergency lighting, it suffered financial losses as the result of Hurricane Agnes, higher fuel costs and general economic conditions; that it is employing in bays D and E fewer persons than it had anticipated when it agreed to install emergency lighting throughout the plant; that bays D and E are provided

with sky lights; and that it would cost $80,000 to $90,000 to install an emergency lighting system *in the entire building* rather than the $25,000 estimated when it agreed to provide the system. The only proofs adduced in support of the appellant's contention that bays D and E would not be in a state of darkness during the period 110 men were working in the area was the hearsay testimony of two company officials concerning tests taken by a maintenance employe at 2:00 o'clock in the afternoon showing a small diminution of candle power when the artificial lighting was turned off.

We have searched in vain in the law and regulations for any explicit authority or power in the Industrial Board to grant variances from or waiver of its regulations and the appellant has cited none. The petition by which the action was commenced refers to Section 15 of the Act of June 2, 1913, P.L. 396, *as amended,* 71 P.S. §1444 which empowers the Board to make rules and regulations and which accords persons interested the right to petition for a hearing on the reasonableness of such rules and regulations. Assuming, without deciding, that this provision authorizes the Board to set aside its safety regulations on the ground that they impose an economic burden on persons subject to them, we find nothing in the record which convicts the Board in this case of abusing its discretion in not granting the relief requested. As mentioned, the appellant's proofs of cost related to the plant in its entirety, and there was no proof of the cost of providing emergency lighting only in bays D and E. Further, the fact that the appellant suffered a substantial loss in one year because of a natural disaster and a small loss the following year for other reasons are not proof that it cannot afford to install an emergency lighting system in a portion of its property.

The appellant seems also to argue that its tests taken at 2:00 o'clock in the afternoon provide sufficient proof that the building would not be in darkness when the 110

persons working on the first shift would be present. As the appellee points out in its brief, the sun does not rise in Birdsboro until after 7:00 o'clock in the morning during parts of December and January. We cannot conclude that the Board capriciously disregarded competent evidence in failing to find that the areas in question would not be in darkness if the power failed at any time between 7:00 o'clock A.M. and 3:00 o'clock P.M. We add in this connection that our reading of the regulation at 34 Pa. Code, §37.374 defines the state of darkness as illumination less than intensities of five-tenths of a foot candle at exits and twenty-five one-hundredths of a foot candle at other places. The appellant made no effort to prove that at times other than 2:00 o'clock in the afternoon the natural lighting would provide this intensity of illumination.

The appellant vigorously argues that because the Chairman of the Board several times referred to the fact that when he left his home at 7:00 o'clock A.M. on September 25, 1973, the date of the hearing, he and other drivers of automobiles found it necessary to use their vehicles' running lights, the Board's order was without foundation. Juries are regularly charged to employ common sense in their deliberations; we see no reason why administrative agencies should not do the same. Furthermore, since the burden was on the appellant to prove that its existing facility complied with the regulations, the emphasis of our review is not on ascertaining whether there is substantial evidence to support the Board's finding of noncompliance but whether the Board capriciously disregarded competent evidence in so finding.

We finally note that the appellant offered at the hearing to change the hours of its shifts. We see no reason why it may not file a new application with such a proposal which, supported by competent evidence of proper tests, may lead to the result it seeks.

ORDER

AND NOW, this 21st day of March, 1975, it is ordered that the appeal of the Birdsboro Corporation be and it is hereby dismissed.